## UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF LOUISIANA

TERRY BRADLEY (#352181)                                    CIVIL ACTION

VERSUS

TERRY TERRELL, ET AL.                                      NO. 09-0121-FJP-CN

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, July 16, 2010.

MAGISTRATE JUDGE CHRISTINE NOLAND

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TERRY BRADLEY (#352181)**                                          **CIVIL ACTION**

**VERSUS**

**TERRY TERRELL, ET AL.**                                           **NO. 09-0121-FJP-CN**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Terry Bradley, challenges his convictions and sentences, entered in 2003 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on three counts of armed robbery and three counts of attempted armed robbery, resulting in 25-year sentences on each count of armed robbery and 10-year sentences on each count of attempted armed robbery, with all sentences to run concurrently. The petitioner complains that the convictions were obtained as a result of an illegal arrest, that the convictions are in violation of the prohibition against double jeopardy, and that he was provided with ineffective assistance of counsel inasmuch as his attorney failed to file a motion to suppress relative to the alleged illegal arrest, failed to file a motion to quash the bill of information on grounds of double jeopardy, and failed to conduct adequate pretrial investigation.

Upon a review of the petitioner's application, it appears that he was tried by jury in February, 2003, and found guilty on four counts of armed robbery and three counts of attempted armed robbery. He was thereafter sentenced, in July, 2003, to 25 years in confinement on each count of armed robbery and 10 years in confinement on each count of

1

attempted armed robbery, with all sentences to run concurrently.  The petitioner appealed these convictions, asserting that the sentences were excessive, that he was provided with ineffective assistance when his trial counsel failed to file a motion to reconsider the sentence, that the trial court erred when it "excluded the responsive verdict of 'Guilty' to the charge[d] offense in the indictment, and listed 'Guilty of Armed Robbery' and 'Guilty Attempted Armed Robbery' as a lesser and included offense," and that he was provided with ineffective assistance when his trial counsel failed to object to erroneous jury instructions and to the responsive verdicts.  On February 16, 2005, the Louisiana Court of Appeal for the First Circuit affirmed the convictions and sentences, State v. Bradley, 895 So.2d 80 (La. App. 1st Cir. 2005), and on December 16, 2005, the Louisiana Supreme Court denied the petitioner's application for supervisory review.  State v. Bradley, 917 So.2d 1104 (La. 2005).  Upon the petitioner's failure to thereafter seek further review in the United States Supreme Court, his convictions became final on or about March 16, 2006, after expiration of the 90-day period allowed for doing so.

On or about November 21, 2006,[1] the petitioner filed an application

---

[1]    Under the "prison mailbox rule," a prisoner's pleadings are deemed filed when he delivers them to prison officials for mailing to the appropriate court." Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999).  See also See Causey v. Cain, 450 F.3d 601 (5th Cir. 2006)(finding that, "the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of state law"); Terrick v. Cain, 2008 WL 4297064 (E.D. La. 2008)(holding that the prison mailbox rule is to be employed in ascertaining the filing date of a prisoner's state court pleadings in the context of determining the timeliness of his federal habeas corpus application).  Applying this rule, the Court will utilize the dates indicated by the petitioner as the dates he signed his respective pleadings, which are the earliest dates that may

2

for post-conviction relief ("PCR") in the state district court, asserting (1) that the convictions were obtained as a result of an illegal arrest, (2) that his attorney provided ineffective assistance by failing to file a motion to suppress the affidavit of probable cause resulting from the alleged illegal arrest, (3) that the convictions were in violation of the double jeopardy clause, and (4) that his attorney provided ineffective assistance by failing to file a motion to quash the bill of information on double jeopardy grounds.   In a supplemental application filed two months later, the petitioner added an additional claim (5) that his attorney provided ineffective assistance by failing to investigate and file appropriate pretrial motion(s). After a response filed by the State to the petitioner's applications, the state court Commissioner issued a recommendation that the petitioner's claims nos. 1 and 5 be dismissed as procedurally barred, and that the remaining claims be dismissed as being without substantive merit.   By Orders dated September 26 and November 9, 2007, respectively, the trial court denied the petitioner's applications, "based on the finding as set forth in the Commissioner's Recommendation" and also "that it lacks merit."   The petitioner's subsequent applications for supervisory review in the Louisiana Court of Appeal for the First Circuit were denied on December 27, 2007, and January 18 2008, respectively.   Subsequent applications for supervisory review in the Louisiana Supreme Court were granted in part on February 13, 2009, resulting in the reversal of one of the counts of armed robbery on double jeopardy grounds.   See State ex rel. Bradley v. State, 1 So.3d 459 (La.

_____

reasonably be inferred to be the dates upon which he delivered his pleadings to prison officials for mailing.

3

2009).  As a result, the remaining six (6) convictions are now before this Court.

On or about March 2, 2009, the petitioner filed the instant habeas corpus proceeding.  Based upon the foregoing, together with a review of the record, the Court concludes that the petitioner's claims are barred, in part, by procedural default, and are otherwise lacking in substantive merit.

<u>Factual Background</u>

As taken from the opinion of the Louisiana Court of Appeal for the First Circuit on direct appeal, the evidence adduced at trial reflects that:

> On June 21, 2002, at approximately 11:00 p.m., Brenda Hilliard (driver) and June Carter (passenger) were traveling south on I-10 in Baton Rouge Louisiana, near the Evangeline Street exit when one of the tires of Brenda's vehicle blew out.  Brenda was talking to her husband, James Hilliard, by cell phone as the tire was blowing out and informed him of their location.  June contacted a friend, Charles Hartley, who lived in the area at the time and informed him of their dilemma and location.  Brenda took the Evangeline Street exit off of the interstate and parked in a U-Haul parking lot, located just off of the interstate.  James contacted a friend, Merle Shelton, who lived nearby.
>
> Charles was the first to arrive and immediately began changing the flat tire.  Shortly thereafter, Merle arrived along with a friend, Paula Purvis.  James also arrived, along with his mother, Camille Pierce.  Thus, there were seven individuals and four vehicles present.  The area was very well lit.  Just before the tire was completely replaced, Brenda observed two males as they walked nearby.  Suddenly, the two males, armed with guns, approached the group.  One of the males placed his gun behind Merle's back, while the defendant walked over to the other side of the vehicle where the rest of the group were standing.  Paula was shoved by one of the gunmen.
>
> The defendant positioned himself in the center of the group and began waving his revolver toward the individuals and demanding they empty their pockets.  The individuals began removing their belongings from their pockets and putting them on the ground.  The items that were placed on the ground were of no value to the defendant, so he began waving the gun and stated, "I am getting nervous."  The defendant inquired as to the whereabouts of the females' purses.  The other gunman retrieved Brenda's and June's purses from Brenda's vehicle.  The defendant and his co-conspirator

4

forced Paula to retrieve her purse from her vehicle and took possession of it. They also took Merle's wallet. No items were taken from James, Charles, or Camille. After retrieving the items referenced above, including their contents, the defendant and his co-conspirator fired their weapons and fled.

On June 23, 2002, Ericka Jackson attempted to purchase a large quantity of baby food and diapers with a check bearing June Carter's name at an Albertson's Grocery Store located in Baker, Louisiana. The cashier, Jocelyn Smith, became suspicious due to the quantity of items that she was attempting to purchase and paged the director of the store, Gary McCarn. Gary took possession of the check and walked behind the camera department of the store. Gary called the telephone number listed on the check and a female who identified herself as June Carter answered. Gary inquired as to whether or not June gave someone else permission to use her checks and June responded negatively and informed Gary of the robbery that occurred two nights before. Gary instructed a store manager to contact the Baker City Police Department.

Gary told Ericka that he was trying to obtain approval of her check in an attempt to stall. Ericka became very nervous and ultimately demanded the return of the check. When Gary stated that he could not return the check, Ericka stated that she had a weapon in her vehicle and threatened to shoot him. Ericka walked out of the store and fled in a vehicle described as a "yellow, tan, beige, color older model."

Officer John Steele of the Baker City Police Department responded to the Albertson's dispatch. He was advised that the person involved in the incident fled the store parking lot in an older model, yellow vehicle, headed south on Plank Road. Officer Steele was at the corner of Plank Road and Groom Road when the vehicle exited the parking lot. After a short chase, Officer Steele stopped the vehicle at the corner of Plank Road and Thomas Road. Three adults were in the vehicle, including the defendant, Jennifer Jones (the defendant's girlfriend), and Ericka Jackson. Children were also in the vehicle at the time. The defendant consented to the search of the vehicle. June Carter's checkbook and social security card were retrieved from the front right floorboard of the vehicle.

It appears that the petitioner was thereafter detained by the Baker Police Department on a charge of possession of stolen things, and that Baker police officers contacted the Baton Rouge Police Department regarding the incident. A subsequent photographic lineup was conducted by Baton Rouge Police officials, resulting in several of the victims positively identifying the petitioner as the person who accosted them during the early morning hours of June 22, 2002. It further appears that

5

the petitioner was thereafter convicted in Baker City Court on a misdemeanor charge of possession of stolen things relative to the checkbook and social security card of June Carter.

<u>Legal Analysis</u>

Initially, it appears that the petitioner's claims nos. 1 and 5, <u>i.e.</u>, that his convictions were obtained as a result of an illegal arrest and that his trial attorney provided ineffective assistance by failing to conduct an adequate investigation, although technically exhausted, are subject to dismissal by reason of procedural default.  In this regard, it appears that although the petitioner raised these claims in his application for post-conviction relief in the state trial court, these claims were ultimately rejected by the state trial court as procedurally deficient.  Specifically, as to claim no. 1, the Commissioner found that the petitioner's failure to raise the issue of the alleged illegal arrest in the trial court and, alternatively, the failure to file a motion to suppress the resulting affidavit of probable cause prior to trial, constituted a waiver of this claim, in express reliance upon La. Code Crim. P. art. 930.4(B) and (C) (providing that a claim may be rejected if the petitioner had knowledge of same and inexcusably failed to raise it at trial or on direct appeal) and La. Code Crim. P. arts. 521 and 703(F) (providing that a failure to file a motion to suppress evidence prevents the defendant from objecting to admissibility).[2]  And as for

---

[2]     The Commissioner concluded, in the alternative, that this claim also lacked substantive merit because, not only was the stop of the petitioner's vehicle legally justified after the attempted forgery at Albertsons, but the further detention of the occupants thereof was also justified after the checkbook and social security card were discovered and after further investigation revealed that the petitioner matched the description provided by the victims of the armed robberies, and a photographic lineup resulted in further

claim no. 5, the Commissioner found that this supplemental claim, added more than two months after the filing of the PCR, was an impermissible successive habeas application, not allowed under La. Code Crim. P. arts. 926 and 930.4(E) (providing respectively that all claims are to be included in an applicant's first PCR and that a successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application).  When the petitioner thereafter sought discretionary review in the state appellate courts, his applications were denied without comment.  Accordingly, the last state court to address the petitioner's claims in this regard clearly relied upon state procedural rules in denying consideration thereof.

When a state court decision to deny post-conviction relief rests on a state procedural ground that is independent of the federal question raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's federal claims.  Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Moore v. Roberts, 83 F.3d 699 (5th Cir. 1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997).  The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." Coleman, supra, 501 U.S. at 729-730, 111 S.Ct. at 2554:

---

corroboration of his involvement.  Finally, the Commissioner pointed out that even if the detention and arrest of petitioner were improper, it has long been held that "an illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." See United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.  The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

Id. at 731-32, 111 S.Ct. at 2554-55 (quoting Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982)); Moore, supra, at 703. This rule applies even if the state court addresses the substance of the claim in the alternative.  Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); Fisher v. State, 169 F.3d 295, 300 (5th Cir. 1999).  To assist in determining whether the last state court reached the merits of the petitioner's claim or rejected the claim on procedural grounds, the United States Supreme Court has fashioned the following presumption: "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991).  The Supreme Court further held that a strong showing is required to rebut this presumption.  Id.

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been, as here, explicitly based on a state procedural rule.  Moore, supra, at 702; Sones v. Harbett, 61 F.3d 410, 416 (5th Cir. 1995).  The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment."  Id.  The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by (1) demonstrating "cause for

the default and actual prejudice as a result of the alleged violation of federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, supra, 501 U.S. at 750, 111 S.Ct. at 2565; Moore, supra, at 702.  The petitioner has made no attempt to satisfy these showings.  Accordingly, this Court is precluded from considering these claims.

Turning to a substantive review of the petitioner's claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254. Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See also Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); Montoya v. Johnson, 226 F.3d 399 (5th Cir. 2000), cert. denied, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212

9

(2001).  Mere disagreement with the state court is not enough: The standard is one of objective reasonableness.  Montoya, supra, 226 F.3d at 404.  See also Williams v. Taylor, supra, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the grant of habeas relief.

Addressing first the petitioner's claim no. 3,[3] that his convictions are violative of the prohibition against double jeopardy, he contends that, because he was convicted of misdemeanor possession of stolen things in the Baker City Court, and because the evidence utilized to convict him in both that conviction and in the convictions for armed robbery and attempted armed robbery were the same, he has been subjected to double jeopardy because he was first exposed to risk in the misdemeanor trial and, so, cannot be exposed to risk again with the same evidence constituting the separate additional felony offenses charged in the Nineteenth Judicial District Court.

The petitioner's contention in this regard must be rejected.  In the first place, the petitioner cannot complain in this Court of any alleged double jeopardy violation relative to his conviction for the armed

_____

[3]    Inasmuch as claims nos. 2 and 4 both deal with alleged ineffective assistance of counsel, they will be addressed together below.

robbery of June Carter inasmuch as that conviction has already been overturned and set aside on double jeopardy grounds by the Louisiana Supreme Court.  State ex rel. Bradley v. State, 1 So.3d 459 (La. 2009). The basis for the Court's decision in that case was the Court's recognition that the Baker misdemeanor conviction for possession of stolen things involved the petitioner's possession of stolen property belonging to June Carter, and that double jeopardy bars a prosecution for armed robbery after a defendant had been convicted of possession of stolen things involving the same property, citing State v. Robertson, 386 So.2d 906 (La. 1980), and State v. Baptiste, 875 So.2d 833 (La. App. 4ᵗʰ Cir. 2004).  Accordingly, inasmuch as the petitioner has already obtained relief in connection with that conviction, his claim relative thereto is not properly before this Court.

With regard to the remaining six convictions, the petitioner's double jeopardy argument also fails.  In this regard, the Double Jeopardy Clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).  Under established precedent, the classic test for resolving an issue of double jeopardy is to question whether each crime charged requires an element of proof that the other crimes charged do not.  "The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other ...."  United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), citing Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).  If each offense requires proof of a

11

fact or facts which the other does not, notwithstanding a substantial overlap in the evidence offered, there is no double jeopardy violation. Blockburger v. United States, supra. In the instant case, the petitioner argues that "the State used the same evidence from his previous Baker arrest and conviction to now convict him here." However, in order to obtain a conviction on each count of armed robbery and attempted armed robbery charged in the bill of information, the prosecution needed to show much more than the mere intentional possession of stolen property, as was required for the Baker conviction. The prosecution needed to show additional factual elements, including the fact of an intentional taking or attempted taking, of property belonging to each of the remaining six separate victims, through force or intimidation, while the petitioner was armed with a dangerous weapon. La. R.S. 14:64. Although the evidence offered during the trials of the respective Baker and Baton Rouge offenses, in the form of the checkbook and social security card belonging to June Carter, overlapped in small part, the offenses charged in the Baton Rouge trial required proof as to substantially different factual elements than those required in the Baker trial. Specifically, the prosecution was required to show that the petitioner, while armed with a dangerous weapon, took something of value or attempted to take something of value belonging to each of the separate and distinct individual victims. And the property taken or attempted to be taken was not the property belonging to June Carter but was instead property belonging to the separate victims. Because each offense required proof of a different fact, therefore, the convictions are not deficient by reason of the double jeopardy clause. Nor was the physical evidence introduced at trial, the checkbook and social security card, the sole

12

evidence utilized to support the petitioner's convictions.   To the
contrary, four of the victims positively identified the petitioner in
court as the robber, and this testimony supported the convictions as to
all.   See Simms v. Cain, 2008 WL 624073 (E.D. La., March 4, 2008)
(testimony from fewer than all victims of armed robbery was sufficient
to support conviction as to non-testifying victim).   The mere fact that
the checkbook and social security card were admitted into evidence in
both trials does not compel a conclusion that the evidence utilized to
convict the petitioner in both trials was the same.

Finally, the petitioner asserts that his attorney provided
ineffective assistance of counsel by failing to move to suppress the
alleged inadmissible affidavit of probable cause resulting from the Baker
arrest and conviction, and in failing to move to quash the bill of
information on double jeopardy grounds.   In this regard, a habeas
petitioner who claims ineffective assistance of counsel must
affirmatively demonstrate:

> (1)   That his counsel's performance was "deficient", i.e.,
> that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment; and
>
> (2)   That the deficient performance prejudiced his defense,
> i.e., that counsel"s errors were so serious as to
> deprive the defendant of a fair trial, a trial in which
> the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984).   The petitioner must make both showings in order to obtain habeas
relief based upon alleged ineffective assistance of counsel.   Id.

To satisfy the deficiency prong of the Strickland standard, the
petitioner must demonstrate that his counsel's representation fell below
an objective standard of reasonableness as measured by prevailing

13

professional standards.  See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  Martin, supra, 796 F.2d at 817.  Great deference is given to counsel's exercise of professional judgment.  Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the petitioner satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989).  To satisfy the prejudice prong of the Strickland test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  Martin, supra, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  Id. at 816-17.

The above showing is one that the petitioner cannot meet in the

instant case.

Initially, with regard to the petitioner's attorney's purported failure to file a motion to suppress the affidavit of probable cause resulting from the Baker arrest of June 23, 2002  there is no reasonable ground for concluding that such a motion would have been successful. Specifically, there is no factual dispute that the petitioner's vehicle was properly stopped on June 23, 2002, upon a reasonable suspicion of illegal activity inasmuch as the vehicle was observed leaving the Albertson's parking lot and met the description given of a vehicle occupied by the perpetrator of an attempted forgery who had just left the store after threatening the store manager with bodily harm.  It is well-recognized that a police officer may conduct an investigative stop of a moving vehicle based upon a reasonable suspicion of criminal activity. See, e.g., United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), and cases cited therein.  There is likewise no dispute that, upon being stopped, the petitioner gave the officer consent to search his vehicle, whereupon the checkbook and social security card of June Carter were discovered.  Accordingly, there can be no question regarding the admissibility of the checkbook and social security card at trial inasmuch as the initial stop was permissible and inasmuch as the petitioner gave consent to conduct the search.  In this regard, the United States Supreme Court has long held that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Finally, upon learning at the scene, from the Albertson's store manager, that the manager had contacted June Carter by telephone and been informed

15

both that she had not authorized anyone to use her checkbook and that her checkbook had been stolen during an armed robbery in Baton Rouge two nights previously, there was probable cause to arrest the occupants of the vehicle on suspicion of possession of stolen things.  See Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).  In this regard, it is recognized that probable cause is a fluid concept which is determined by the totality of the evidence.  Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  It is further recognized that possession of a thing may be actual or constructive, may be individual or joint among several people, and may be proved by circumstantial as well as by direct evidence.  See, e.g., United States v. Igbingie, 5 F.3d 1494 (1993).  Constructive possession has been defined as "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance."  United States v. Marx, 635 F.2d 436 (5th Cir. 1981).  In addition, one who owns or exercises dominion or control over a motor vehicle in which a contraband substance is concealed may be deemed to possess the contraband.  United States v. Riggins, 563 F.2d 1264 (5th Cir. 1977), cert. denied, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978).  Although the petitioner makes much of the fact that the stolen checkbook and social security card were found in a diaper bag allegedly owned by another occupant of the vehicle, it appears that the bag was located in the front compartment of the vehicle with the petitioner, whereas the purported owner of the bag, who had just attempted to pass the forged check, was seated in the back with several children.  In addition, there is some indication that the petitioner made an initial attempt to elude the police officer before coming to a stop (because the arresting officer

16

indicated that he engaged in a "short chase" of the petitioner's vehicle), and evasion is one factor which is pertinent to a determination of probable cause.  See United States v. Newman, 472 F.3d 233 (5ᵗʰ Cir. 2006).  Further, it appears reasonable to conclude that the petitioner may have been aware of his passenger's intent to pass the forged check inasmuch as he apparently waited outside the store while she went in to attempt the purchase, and was apparently ready to speedily leave when the attempt proved unsuccessful.  In Maryland v. Pringle, supra, the United States Supreme Court found, in similar circumstances, that the police had probable cause to arrest three occupants of a vehicle when none of the occupants admitted possession of narcotics found therein.  In finding that the officer had probable cause to arrest the defendant, as well as the other two occupants, the Court concluded that the evidence provided a reasonable inference "that any or all three of the occupants had knowledge of, and exercised dominion and control over" the narcotics.  The Court explicitly stated that this was not a guilt-by-association finding but was, instead, a conclusion that it was reasonable to infer that the occupants, in close quarters with the contraband in the vehicle, were involved in a common enterprise.  Thus, there existed a fair probability that each of the individuals was guilty of a crime, even though there was no conclusive evidence pointing to any one person in particular.  Id. at 372, 124 S.Ct. at 795 ("[A] reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.").  See also United States v. Yanez, 490 F.Supp.2d 765 (S.D. Tex. 2007).  And finally, when further investigation revealed that the petitioner matched a description provided to police of the perpetrator of the armed robbery

17

of June Carter in Baton Rouge two nights previously, and a photographic lineup resulted in the identification of the petitioner as one of the perpetrators thereof, there was clearly probable cause for his continued detention on charges of armed robbery.  See United States v. Ferro, 709 F.2d 294 (5th Cir. 1983) ("[T]his circuit has 'held in numerous cases that the unexplained possession of stolen property may be shown to permit an inference ... that the possessor participated in the theft of the property'"), quoting from United States v. Marchbanks, 469 F.2d 72 (5th Cir. 1972).  It is inconceivable, therefore, that a motion to suppress would have proven successful, and the petitioner's attorney may not be found to have been ineffective for a failure to file a meritless motion.  United States v. Gibson, 55 F.3d 173 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions"); United States v. Kimler, 167 F.3d 889 (5th Cir. 1999) ("An attorney's failure to rase a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  Accordingly, the petitioner's assertion in this regard is without merit and must be rejected.

Second, the petitioner's attorney may not be faulted for having failed to file a motion to quash, on Fifth Amendment double jeopardy grounds, the bill of information charging the petitioner with multiple counts of armed robbery and attempted armed robbery.  As previously noted, the single count of armed robbery of June Carter has already been set aside on review by the Louisiana Supreme Court, and any deficiency in the petitioner's attorney's conduct in this regard has therefore been corrected.  Accordingly, the petitioner cannot show prejudice resulting

18

from his counsel's actions relative to that conviction.  With regard to the remaining six counts, this Court has already concluded that there is no federal double jeopardy violation relative to these convictions, and as a result, the Court sees no deficiency in the petitioner's attorney's failure to seek to quash the bill of information on this ground. Notwithstanding this conclusion, the Court further notes that Louisiana applies a somewhat different legal standard in determining a violation of state double jeopardy laws, the so-called "same evidence" test.  See State v. Sandifer, 679 So.2d 1324 (La. 1996).  The same evidence test "focuses upon the actual physical and testimony evidence necessary to secure a conviction." Id.  In essence, it asks "if the evidence required to support a finding of guilt of one crime would also support a conviction for another offense." Id.  In comparison to the federal constitutional standard, the same evidence test is broader in scope and more protective of a defendant's rights.  See Louisiana v. Williams, 978 So.2d 895 (La. 2008).  Accordingly, in light of the greater protection provided by the Louisiana standard, there is a greater possibility that the petitioner's attorney may be found ineffective for not filing a motion to quash. See Reddit v. Cain, 2009 WL 2616035 (E.D. La., Aug. 25, 2009).

Applying the "same evidence" test to the plaintiff's convictions, the Court still finds no deficiency in the petitioner's attorney's failure to file a motion to quash the bill of information.  The evidentiary elements necessary for proof of the offense of possession of stolen things are (1) possessing, procuring, receiving or concealing, (2) anything of value, (3) which has been the subject of a robbery or theft, (4) under circumstances indicating that the defendant knew or should have

19

known that the thing was stolen.  Baker City Ordinance 14-96.  <u>See also</u>
La. R.S. 14:69.  In contrast, the elements of armed robbery are (1) a
taking, (2) of anything of value, (3) belonging to another, (4) from the
person of or in the immediate control of another, (4) by the use of force
or intimidation, (5) while armed with a dangerous weapon.  La. R.S.
14:64.  The offenses, therefore, required a different evidentiary basis
to sustain the respective convictions, and evidence sufficient to convict
the petitioner of either possession of stolen things or armed robbery
would not have been sufficient to convict the petitioner of the other
offense.  Moreover, the evidence introduced in the Baker prosecution,
consisting of property belonging solely to June Carter, and the pertinent
evidence in the armed robbery and attempted armed robbery convictions in
Baton Rouge, consisting of testimony regarding the taking or attempted
taking of <u>different</u> property belonging to the other victims, was entirely
separate and distinct.  Accordingly, double jeopardy was not an issue
with respect to which the petitioner's attorney needed to file a motion
to quash, and he was not ineffective for having failed to raise this
meritless double jeopardy argument.  <u>See</u> <u>State v. Baptiste</u>, <u>supra</u>
(holding that while a conviction for possession of stolen things, as to
property belonging to one victim of an armed robbery, bars a prosecution
for armed robbery as to that victim, it does not preclude a prosecution
for armed robbery as to a second victim involved in the robbery: "[T]he
property stolen from Mr. Broussard is not the same evidence ... necessary
to support a conviction for the armed robbery of Mr. Cole, and because
the offense of armed robbery contains elements other than the taking of
anything of value, prosecution for this count will satisfy the
"additional fact" test.").

<u>RECOMMENDATION</u>

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, July 16, 2010.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**